S. AMANDA MARSHALL
United States Attorney
District of Oregon
SCOTT E. BRADFORD
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
(541) 465-6771

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 06:13-CR-00521-AA |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| vs. | |
| BRYAN GRUETTER, | (Sentencing set for March 17, 2014, at 9 a.m.) |
| Defendant. | |

The United States of America, by and through S. Amanda Marshall, United States Attorney for the District of Oregon, and Scott E. Bradford, Assistant United States Attorney, submits the following sentencing memorandum, recommending that this Court sentence defendant Bryan Gruetter to 57 months' imprisonment and three years of supervised release and order him to pay $1,144,487.97 in restitution to the victims identified in the Presentence Investigation Report (PSR).

**INTRODUCTION**

The scheme to defraud in this case was neither complicated nor sophisticated; it was really quite simple: defendant, a lawyer and a former chairman of the Oregon State Bar's ethics committee, stole his clients' money. In fact, he stole a lot of their money—more than $1.1

million—and, in a few cases, it was all of their money.  While defendant's scheme was straightforward and simple, the impact of his illegal conduct has been, and will continue to be, anything but such.

Defendant was a personal injury attorney, and many of his clients had already been injured and victimized in automobile accidents and other events.  His clients came to him to help them, to stand up for them, and to seek justice for them.  Instead, defendant lied to them and stole their money, victimizing already vulnerable individuals even further.  Sylvia Stevens, the Executive Director of the Oregon State Bar, explained it well in her letter to the Court:

> On a personal level, Mr. Gruetter's clients suffered twice.  Injured in auto accidents and other events, they looked to Mr. Gruetter to pursue their rights to damages, only to find themselves victimized again by the very person in whom they had placed their trust and confidence.  Several of the clients were also embarrassed and frightened to find themselves pursued aggressively by medical providers whom the clients believed had been paid; a few never say any benefits of Mr. Gruetter's work, as he misappropriated their entire settlements.

The victims of defendant's crimes expressed similar feelings in their victim impact statements (VIS) to the Court, noting:

- "So now I feel like I have been victimized twice."

- "As a person alone with no one to help during my recovery from a head injury, it was especially devastating to find it necessary to deal with such a bizarre betrayal.  I placed my trust in Brian [sic] Gruetter to guide, advise, and assist me through a maze of medical and legal hurdles. . . . It is impossible to even convey the full impact of his crime on my life. . . . [T]he psychological effects are many, varied, and may last a lifetime."

- "Bryan's embezzlement of [the] settlement monies left us devastated emotionally and financially. . . . Gruetter stole our hope of rehabilitation from all of us. . . . To be lied to and stolen from was only a portion of the hurt Mr. Gruetter inflicted upon our family.  We had trust in our attorney! . . . Bryan's crimes of lies, deceit, and theft, while looking at you face to face hurt many as well as inflicted a blow to his own profession.  We

thought of Bryan as a friend who had come to know our family and saw the devastation and hurt of [the] injuries to all of us.

- "Bryan Gruetter's effect on my life has been a large toll on my life. He has made me feel like a total idiot for believing all of his lies for six years. . . . After I was injured the money from my fall would have been a tremendous help to us. The emotional and mental ups and downs were detrimental and hard to endure along with all of my injuries and kidney failure."

Defendant's betrayal of his client's trust has also impacted his former profession as a whole. As one victim shared in a VIS, "I am sure I will be hard-pressed to ever trust another attorney, should I need one in the future." Another victim wrote, "Financially, yes, the settlement loss hurt us, but moreover, the damage from an individual who takes an oath of truth then does nothing but lie to you over and over again is unforgiveable." As Ms. Stevens noted in her letter to the Court:

> The publicity surrounding Gruetter's conduct, both in Deschutes County where Gruetter practiced as well as throughout Oregon, undoubtedly tarnished the reputation of lawyers even when accompanied by publicity about the [Client Security Fund's] efforts to ameliorate the clients' losses.

Defendant singlehandedly depleted the Oregon State Bar's Client Security Fund (CSF), a fund that was created to minimize or relieve losses to clients of active bar members caused by those bar members' dishonest conduct in the practice of law. According to Ms. Stevens at the time she wrote her letter to the Court:

> In 2012 and 2013, the CSF made awards to 38 of Gruetter's former clients totaling $888,704.71. The awards ranged from $500.00 to $50,000, the maximum award allowed under the CSF Rules. There were eight awards of $50,000 and in a few of those cases, the award was considerably less than the claimant's actual loss.
>
> The Gruetter claims, although an anomaly in the history of the CSF, had far-reaching consequences for the bar. The total of the claims exceeded both the CSF reserve and the 2012 income from

GOVERNMENT'S SENTENCING MEMORANDUM - 3

member assessments. The exhaustion of the reserve necessitating an increase in the members' annual assessment from $15 to $45 beginning in 2013 and continuing until the reserve is once again fully funded.

Defendant may seek to justify or excuse his conduct because he is an alcoholic or because he has certain medical conditions due to his abuse of alcohol. Defendant's behavior can neither be justified nor excused. Defendant, the former chairman of the Oregon State Bar's ethics committee, left many of his clients desperate, broken, and further victimized. He also left a profession that is supposed help people with a black eye. As such, the government requests that this Court sentence defendant to 57 months' imprisonment and three years of supervised release and order him to pay $1,144,487.97 in restitution.

## INSTANT OFFENSE AND RELEVANT CONDUCT

On December 9, 2013, defendant pled guilty to a one-count information pursuant to a plea agreement. Defendant was charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 for diverting more than $1.1 million of his clients' money to pay for personal and business expenses. Defendant's illegal conduct is well described in paragraphs 10-13 of the PSR and is briefly summarized below.

Defendant was an attorney licensed to practice law in Oregon and had offices in Portland and Bend, Oregon. He primarily worked personal injury and wrongful death cases. On February 3, 2012, the Oregon State Bar took custody of defendant's law practice due to complaints that defendant had neglected his clients' legal matters, failed to communicate with his clients, failed to deliver settlement funds to his clients, and failed to use the settlement funds to pay clients' unpaid medical bills. On March 9, 2012, defendant resigned his law license, deciding not to challenge the allegations.

In 2012, law enforcement began investigating defendant's use of his clients' money and determined that between January 2008 and January 2012 defendant illegally diverted more than $1.1 million of his clients' money. The illegally diverted money was his clients' money paid in the form of a retainer or the clients' portion of settlements that defendant secured on his clients' behalf. Defendant and others used his clients' money to pay for personal and business expenses rather than to pay the clients or to pay the clients' legal, medical, insurance, or other associated costs. When interviewed defendant admitted that he was "robbing Peter to pay Paul" because his law firm's monthly income was insufficient to cover the monthly overhead, which included personal family payments.

Currently, the Oregon State Bar has paid more than $900,000 from the CSF in an attempt to mitigate some of the harm that defendant has caused. In total, defendant caused a loss of at least $1,144,487.97

## CRIMINAL HISTORY AND OFFENSE LEVEL

As noted in the PSR and the plea agreement, the parties agree that defendant's Total Offense Level is 24 and that his Criminal History Category is I, resulting in an advisory United States Sentencing Guidelines range of 51-63 months of incarceration. Additionally, pursuant to 18 U.S.C. § 3583, the term of supervised release to be imposed may not exceed three years.

## SENTENCING RECOMMENDATION

In this case, a 57-month term of imprisonment is appropriate and reasonable based on the factors outlined in 18 U.S.C. § 3553(a)–that is, this sentence contemplates the nature and circumstances of the offense and the history and characteristics of the defendant, reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the

offense, affords adequate deterrence to criminal conduct, and protects the public from further crimes of the defendant.

This case is about more than the defendant, his alcoholism, his medical issues, or money; it is also about people and the role a lawyer should play in a client's life. Despite his alcoholism, defendant knew what he was doing was wrong; he was the former chairman of the Oregon State Bar's ethics committee and lectured on ethics and professional responsibility. In this case, defendant made deliberate choices to repeatedly lie to his clients and to repeatedly steal their money. Defendant engaged in a criminal course of conduct that lasted four years. Moreover, his clients were vulnerable, he knew it, and he took advantage of it. He betrayed their trust when they looked to him for help, when they looked to him to be their voice and to speak on their behalf.

In his dissent in *United States v. Edwards*, 622 F.3d 1215, 1216-17 (9th Cir. 2010), Judge Gould explained that "while judges take seriously violent crimes and are forced by congressional mandatory minimums to take seriously drug crimes, there is latent risk in the case of white-collar sentencing that an 'it's only money' rationale will result in undue leniency." Judge Gould explained that viewing white-collar cases as only "money cases" can create a danger of sentencing disparity: "Because of the nature of their crimes, white-collar offenders are uniquely positioned to elicit empathy from a sentencing court." *Id.* at 1216. In other words, defendants engaged in fraud and similar criminal activities can end up spending token, inadequate, or no time in jail. *Id.* at 1215. Judge Gould concluded: "It doesn't take a crystal ball to see that those occasional dishonest persons in the business community may make a slide-rule calculation that they can steal hundreds of thousands of dollars, maybe even millions, because if caught they see a good chance that they can walk away with expressed contrition and probation." *Id.*

In light of the facts of this case, a 57-month term of imprisonment reflects the seriousness of stealing more than $1.1 million, betraying the trust of some of the most vulnerable members of our society, and sullying the reputation of his former profession. Further, such a sentence will not only deter defendant from engaging in future criminal conduct but will likely deter similarly situated individuals from engaging in this type of illegal activity.

**RESTITUTION**

Regarding restitution, defendant, as part of his plea agreement, agreed to pay $1,144,487.97 in restitution pursuant to 18 U.S.C. § 3663A, the Mandatory Victim Restitution Act ("MVRA"). The MVRA makes restitution mandatory for offenses involving fraud or deceit without consideration of a defendant's economic circumstances. 18 U.S.C. § 3663A(a)(1), (a)(2), and (c)(1)(ii); 18 U. S.C. § 3664(f)(1)(A). Restitution includes losses directly resulting from a defendant's criminal conduct and includes losses relating to the count of conviction and relevant conduct. *United States v. Andrews*, 600 F.3d 1167, 1170-71 (9th Cir. 2010); *United States v. Bright*, 353 F.3d 1114, 1120-21 (9th Cir. 2004). In this case, the evidence shows and defendant agrees that his criminal conduct resulted in losses of $1,144,487.97. Accordingly, this Court should order defendant to pay $1,144,487.97 in restitution to the victims outlined in the PSR.

//
//
//
//
//
//

## CONCLUSION

Defendant's clients came to him injured and damaged, and they trusted him to seek justice on their behalf and to help them heal. Defendant violated that trust. He lied to his clients, and he stole their money. He further victimized them, leaving some of them more damaged and broken than when he found them. Moreover, he tarnished the practice of law, a profession that is supposed to help people. Based on the foregoing, the plea agreement, and the PSR, the government submits a reasonable sentence for this defendant in this case is 57 months' incarceration to be followed by a three-year term of supervised release. Additionally, the Court should order defendant to pay $1,144,487.97 in restitution.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney District of Oregon

*/s/ Scott E. Bradford*
SCOTT E. BRADFORD
Assistant United States Attorney